1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| CHARLES R. JACOBS, | ) | 1:09-cv-01804-SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Docs. 1, 18) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

18

19

## BACKGROUND

20

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21 "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB")

22 payments pursuant to Title II of the Social Security Act (the "Act"). 42 U.S.C. §§ 401, *et seq*. The

23 matter is currently before the Court on the parties' briefs, which were submitted, without oral

24 argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

25

26

27      [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 9, 11.)  On April 7,
2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ.
28 P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1967, has a high school education, and previously worked as a correctional officer and as a driver/carrier for Airborne Express. (Administrative Record ("AR") 20, 145.) On January 8, 2007, Plaintiff filed an application for DIB, alleging disability beginning September 1, 2006, due to high blood pressure, an enlarged heart, and migraines. (*See* AR 117-46.)

On August 3, 2006, Dr. Pam Janda diagnosed Plaintiff with elevated blood pressure, osteopenia, and hyperlipidemia.[2] (AR 236.) On August 29, 2006, Plaintiff was again examined by Dr. Janda and reported dizziness, pain in his left ear radiating to his left eye, vomiting, and feelings of weakness and clamminess. (AR 235.) Dr. Janda referred Plaintiff to the emergency room to rule out a heart attack. (*Id*.) In emergency care, Plaintiff was administered an electrocardiogram ("ECG"), a computed tomography ("CT") scan, a spinal tap, and x-rays of his chest. (AR 209-31.) The results of the CT scan were negative (AR 220), x-rays of his chest revealed a "[p]robable right pericardial fat-pad[,]" but "[n]o accute cardiopulmonary disease identified," (AR 221) and the ECG results were normal (AR 209). Plaintiff was discharged from the emergency room the same day he was admitted. On September 1, 2006, Plaintiff saw Dr. Janda for follow-up treatment after his emergency room visit. (AR 234.) Dr. Janda assessed Plaintiff with hypertension and noted that his labyrinthitis[3] was improved. (*Id*.)

On March 25, 2007, a state psychiatrist, Dr. Ekram Michiel, examined Plaintiff who reported that he started to feel depressed when he lost his job in September 2006. (AR 239.) Following an examination, Dr. Michiel diagnosed Plaintiff with depressive disorder, NOS but opined that Plaintiff is able to maintain attention and concentration and can carry out simple job instructions: "The claimant is able to relate and interact with coworkers, supervisors[,] and the general public. The claimant is unable to carry out an extensive variety of technical and/or complex instructions." (AR 241.)

---

[2] Hyperlipidemia is a "general term for elevated concentrations of any or all of the lipids in the plasma." *Dorland's Illustrated Medical Dictionary*, 903 (31st ed. 2007).

[3] Labyrinthitis is "inflammation of the labyrinth" and may be "accompanied by hearing loss or vertigo." *Dorland's Illustrated Medical Dictionary*, 1009 (31st ed. 2007).

1        Also in March 2007, state agency consultant, R. J. Feder, reviewed Plaintiff's medical records

2 and opined that he was able to do simple repetitive tasks, given his physical and mental limitations.

3 (AR 238.)

4        On April 11, 2007, a state agency psychiatrist, Dr. G. F. Johnson, completed a Psychiatric

5 Review Technique form and a Mental Residual Functional Capacity Assessment. (AR 242-55.) Dr.

6 Johnson indicated that Plaintiff experienced mild limitations in restrictions of his activities of daily

7 life and in maintaining social functioning. (AR 250.) Dr. Johnson also indicated that Plaintiff had

8 moderate difficulties in maintaining concentration, persistence, or pace. (*Id*.) Further, Plaintiff was

9 found to be moderately limited in his ability to (1) understand, remember, and carry out detailed

10 instruction, (2) maintain attention and concentration for extended periods, (3) perform activities

11 within a schedule, maintain regular attendance, and be punctual with customary tolerances,

12 (4) complete a normal word day and work week without interruptions from psychologically based

13 symptoms and to perform at a consistent pace, (5) accept instructions and respond appropriately to

14 criticism from supervisors, and (6) respond appropriately to changes in the work settings. (AR 253-

15 54.)

16        On April 25, 2007, the Commissioner denied Plaintiff's application for disability. (AR 96-

17 100.) On June 20, 2007, Plaintiff requested reconsideration (AR 103), but this request was denied

18 (AR 104).

19        In August and September 2007, state agency consultants, Drs. A. Garcia and Charles

20 Franccchia, opined that Plaintiff had no severe physical impairments, but his mental functioning was

21 limited to simple repetitive tasks. (AR 310-11.)

22        On October 24, 2007, Plaintiff requested a hearing with an Administrative Law Judge

23 ("ALJ"). (AR 110). Prior to the hearing before the ALJ, additional medical records from the

24 Department of Veterans Affairs ("VA") were added to the record. The VA records span the period

25 between February 5, 2007, and October 10, 2008. (AR 256-309, 312-87.) The records indicate that

26 Dr. Gurcharan P. Gill has treated, and continues to treat, Plaintiff for various medical conditions.

27 Dr. Gill has diagnosed Plaintiff as having a mood disorder, hypertension, hyperlipidemia,

28 hypogonadism, allergic rhinitis, and chronic fatigue syndrome ("CFS"). (AR 270, 338, 345, 351,

1   376, 394, 473.)  On April 6, 2007, as part of Plaintiff's treatment, he was placed on a low dose of

2   Prozac for his mood disorder and was administered a testosterone replacement. (AR 273.)  On April

3   27, 2007, Plaintiff reported to Dr. Gill that he was suffering from fatigue, but no diagnosis of CFS

4   was noted.  (AR 270.)  On January 18, 2008, Dr. Gill diagnosed Plaintiff with CFS.  Dr. Gill

5   proceeded to diagnose Plaintiff with CFS on subsequent occasions in July (AR 351), August (AR

6   345), and October 2008 (AR 338).

7          On January 22, 2009, a hearing was held before ALJ Bert C. Hoffman, Jr.  (AR 27-63.)

8   Plaintiff testified that he was currently working as an in-home care provider through In Home

9   Supportive Services, and he lives with his client and her son.  (AR 20, 32, 160.)  As an in-home

10  provider, Plaintiff works about two hours per day, assisting his client with her grocery shopping,

11  medications, driving her to doctors' appointments, cooking one to two meals per day, and

12  occasionally administering a shot for her asthma.  (AR 36, 38-40.)  He does not feel that he could

13  work at any job for eight hours per day, five days per week.  (AR 43 ("I don't like work. I just don't

14  like being around people anymore.  I'd rather be by myself.").)  He has dizzy spells lasting one to

15  two hours which affects his ability to walk and stand.  (AR 47.)  He has three to four dizzy spells per

16  day, and each requires him to lie down.  (AR 47.)  The dizziness began when he started taking

17  medication for his hypertension.  (AR 48.)  He has tried additional medication to control the

18  dizziness, but it makes him sleepy.  (AR 49.)  With regard to his CFS, he feels tired "pretty much

19  every day."  (AR 49.)  When he experiences this tiredness, he must lie down or "sit and recline

20  back."  (AR 50.)  He has dealt with CFS for approximately two years, but he also has a "hormone

21  deficiency that causes fatigue."  (*Id*.)  When Plaintiff does rest or sleep, it is not always restful.

22  Sometimes, despite being fatigued, he cannot sleep at all and experiences insomnia.  (*Id.*)  He can

23  concentrate on a task for only five to ten minutes after which he needs to take a break for

24  approximately an hour.  (AR 61.)

25          On March 26, 2009, the ALJ issued a decision, finding Plaintiff not disabled since the alleged

26  date of onset of his disability on September 1, 2006.  (AR 12-26.)  Specifically, the ALJ found that

27  Plaintiff (1) has not engaged in substantial gainful activity since he applied for DIB; (2) has an

28  impairment or a combination of impairments that is considered "severe" based on the requirements

1   in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments

2   that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1;

3   (4) could not perform his past relevant work; *but* (5) has the residual functional capacity ("RFC") [4]

4   to perform a full range of work at all exertional levels, limited to simple repetitive tasks; and (6) can

5   perform jobs that exist in significant numbers in the national economy.  (AR 7-15.)

6          Plaintiff sought review of this decision before the Appeals Council.  In support of his request

7   for review, Plaintiff submitted a letter from Dr. Gill dated May 14, 2009, that stated the following:

8          The above patient has been under my care for several years.  He has Chronic Fatigue
           Syndrome which has been recalcitrant to all medical management and evaluation.
9          He[,] in addition[,] has [m]ood disorder and [Post Traumatic Stress Disorder] which
           compromises his functional status.  He has not been able to work in any vocational
10         capacity and I have had no reason to believe that he is malingering.

11  (AR 394.)

12         On September 9, 2009, the Appeals Council reviewed the newly submitted evidence, but

13  denied review stating that, while it had considered the letter from Dr. Gill, it found that "this

14  information does not provide a basis for changing the Administrative Law Judge's Decision."  (AR

15  2.)   Therefore, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R.

16  § 404.981.

17         On October 13, 2009, Plaintiff filed a complaint before this Court seeking review of the

18  ALJ's decision.  Plaintiff argues that the ALJ erred by failing to properly assess his CFS condition.

19                                    **SCOPE OF REVIEW**

20         The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

21  by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

22  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

23  of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

24  determine whether the Commissioner applied the proper legal standards and whether substantial

25  ────────────────

26         [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in
    a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.
27  Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from
    an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's
    RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and
28  'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1  evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d

2  909, 911 (9th Cir. 2007).

3         "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

4  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

5  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

6  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

7  305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both

8  the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

9  may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*

10  *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

11                                              **REVIEW**

12         An individual is considered disabled for purposes of disability benefits if he or she is unable

13  to engage in any substantial, gainful activity by reason of any medically determinable physical or

14  mental impairment that can be expected to result in death or that has lasted, or can be expected to

15  last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

16  1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or

17  impairments must result from anatomical, physiological, or psychological abnormalities that are

18  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

19  such severity that the claimant is not only unable to do her previous work, but cannot, considering

20  her age, education, and work experience, engage in any other kind of substantial, gainful work that

21  exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

22         The regulations provide that the ALJ must undertake a specific five-step sequential analysis

23  in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

24  claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

25  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

26  or a combination of impairments significantly limiting her from performing basic work activities.

27  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

28  claimant has a severe impairment or combination of impairments that meets or equals the

1  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

2  §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

3  has sufficient RFC despite the impairment or various limitations to perform her past work.  *Id.*

4  §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that

5  the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

6  §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

7  sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

8  (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

9  **DISCUSSION**

10  **A.    Parties' Contentions**

11        Plaintiff asserts that the ALJ improperly ignored the opinion of Plaintiff's treating physician,

12  Dr. Gill, that Plaintiff suffers from CFS, and, therefore, failed to determine that Plaintiff's CFS is

13  a medically determinable impairment.  (Plaintiff's Brief ("Br.") at 5-7.)  The Commissioner asserts

14  that the "ALJ properly did not discuss Plaintiff's alleged CFS because there was no evidence in the

15  record to indicate that CFS was a medically determinable impairment."    (Commissioner's

16  ("Comm'r's") Br. at  4:11-12.)

17  **B.    Medically Determinable Impairment**

18        **1.    Social Security Ruling 99-2p**

19        The Commissioner contends that CFS can only constitute a  medically determinable

20  impairment when it is accompanied by medical signs or laboratory findings as explained in Social

21  Security Ruling ("SSR") 99-2p: *Titles II and XVI: Evaluating Cases Involving Chronic Fatigue*

22  *Syndrome (CFS)*, 1999 WL 271569.[5]    The Commissioner asserts that there are no such medical

23  signs or laboratory findings in the record, and the ALJ, therefore, was not required to discuss

24  Plaintiff's CFS diagnoses.  (Comm'r's Br. at 4:10-11.)

25        SSR 99-2p was issued for the purpose of restating and clarifying the policies of the Social

26  Security Administration for developing and evaluating claims for disability based on CFS.  SSR 99-

27

28
       [5] Social Security Rulings are not conclusive and do not have the force of law, but they are entitled to deference to the extent they are consistent with statutes and regulations.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

1    2p, 1999 WL 271569, at *1-2.  The Ruling explains that the Centers for Disease Control and

2    Prevention ("CDC") has established criteria to use as an identification tool to diagnose CFS.  The

3    CDC criteria include a requirement that four or more of a specific list of symptoms should be present

4    to support a diagnosis for CFS.  *Id.*  SSR 99-2p explains the following:

5           Under the CDC definition, the hallmark of CFS is the presence of clinically
            evaluated, persistent or relapsing chronic fatigue that is of new or definite onset (i.e.,
6           has not been lifelong), cannot be explained by another physical or mental disorder,
            is not the result of ongoing exertion, is not substantially alleviated by rest, and results
7           in substantial reduction in previous levels of occupational, educational, social, or
            personal activities.  Additionally, the current CDC definition of CFS requires the
8           concurrence of 4 or more of the following symptoms, all of which must have
            persisted or recurred during 6 or more consecutive months of illness and must not
9           have pre-dated the fatigue:

10                 Self-reported impairment in short-term memory or concentration severe
                   enough to cause substantial reduction in previous levels of occupational,
11                 educational, social, or personal activities;
                   Sore throat;
12                 Tender cervical or axillary lymph nodes;
                   Muscle pain;
13                 Multi-joint pain without joint swelling or redness;
                   Headaches of a new type, pattern, or severity;
14                 Unrefreshing sleep; and
                   Postexertional malaise lasting more than 24 hours.
15          . . .

16          Under the CDC definition, the diagnosis of CFS can be made based on an
            individual's reported symptoms alone once other possible causes for the symptoms
17          have been ruled out.  However, the foregoing statutory and regulatory provisions
            require that, for evaluation of claims of disability under the Act, there must also be
18          medical signs or laboratory findings before the existence of a medically determinable
            impairment may be established.

19
     *Id.*
20
            SSR 99-2p provides guidance as the adjudication of whether a claimant's CFS represents a
21
     medically determinable impairment.  To that end, SSR 99-2p provides examples of the types of
22
     medical signs and laboratory findings that support a finding that an individual with CFS has a
23
     medically determinable impairment.  In terms of evaluation by the adjudicator, SSR 99-2p provides
24
     the following:
25
            For purposes of Social Security disability evaluation, one or more of the following
26          medical signs clinically documented over a period of at least 6 consecutive months
            establishes the existence of a medically determinable impairment for individuals with
27          CFS:
                   •      Palpably swollen or tender lymph nodes on physical examinations;
28                 •      Nonexudative pharyngitis

8

1
- Persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or
2
- Any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case
3
    record.

. . .
4
[T]he following laboratory findings establish the existence of a medically determinable impairment in individuals with CFS:
5

6
- An elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or greater than 1:5120, or early antigen equal to or greater
7
    than 1:640;
- An abnormal magnetic resonance imaging (MRI) brain scan;
8
- Neurally mediated hypotension as shown by tilt table testing or another clinically accepted form of testing; or,
9
- Any other laboratory findings that are consistent with medically accepted practice and are consistent with the other evidence in the
10
    case record; for example, an abnormal exercise stress test or abnormal sleep studies, appropriately evaluated and consistent with the other
11
    evidence in the case record.

12   SSR 99-2p, 1999 WL 271569, at *3.  It is this framework that the adjudicator applies to disability

13   evaluations for CFS.

14           **2.       Failure to Discuss and Evaluate Significant Probative Evidence**

15           An ALJ has a duty to explain his or her decisions and must do more than simply offer

16   conclusions. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  Typically, this burden is met

17   by setting out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating

18   his interpretation thereof, and making findings." *Id.*  While the ALJ has no duty to discuss *all* of the

19   evidence contained in the record, he or she must explain why "significant probative evidence has

20   been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal

21   quotation marks omitted).

22           Here, the ALJ explicitly found that Plaintiff's depressive disorder was a medically

23   determinable impairment. (AR 17.)  However, in considering Plaintiff's impairments, the ALJ did

24   not acknowledge the multiple diagnoses for CFS by Plaintiff's treating physician.  Multiple

25   diagnoses of CFS by a treating physician represent significant evidence as to Plaintiff's claim that

26   he suffers from disabling fatigue.  Further, multiple diagnoses rendered by a treating physician are

27   at least facially probative to establish the existence of a medically determinable condition – after all,

28   the physician deemed the condition to be medically determinable as indicated by repeated diagnoses.

1   *See Johnson v. Astrue*, No. C-07-2387 EMC, 2008 WL 1885817, at *6 (N.D. Cal. Apr. 25, 2008)

2   (error in failure to discuss myofascial pain syndrome diagnosis by treating physician as it was both

3   probative and significant).

4          Moreover, the ALJ's complete silence as to Plaintiff's diagnoses for CFS is an implicit

5   rejection of Dr. Gill's opinion that Plaintiff does suffer from a medically determinable impairment

6   diagnosed as CFS.  Not only is this medical evidence significant and facially probative, it is typically

7   entitled to great weight because it was offered by a treating physician.  *Magallanes v. Bowen*,

8   881 F.2d 747, 751 (9th Cir. 1989) (opinion of treating physician is afforded the greatest weight

9   because "he is employed to cure and has a greater opportunity to know and observe the patient as

10  an individual") (internal quotation marks omitted).  While the ALJ was entitled to reject Dr. Gill's

11  opinion, he was obligated to state reasons for doing so.  *Reddick*, 157 F.3d at 725.  Total silence does

12  not meet this burden.

13         Nonetheless, the Commissioner argues that the ALJ had no duty to even discuss Dr. Gill's

14  diagnoses of Plaintiff's CFS because the totality of the medical evidence does not support Dr. Gill's

15  medical opinion.  For example, Dr. Gill's multiple diagnoses for CFS are not accompanied and

16  supported by objective medical findings or any stated rationale.  *See Thomas v. Barnart*, 278 F.3d

17  947, 957 (9th Cir 2002) ("The ALJ need not accept the opinion of any physician, including a treating

18  physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

19  (*See* Comm'r's Br. at 5:21 - 6:1.)  The Commissioner also points out that the record does not contain

20  the objective medical signs or laboratory findings required by the CDC and SSR 99-2p for

21  confirming a diagnosis of CFS and considering whether it represents a medically determinable

22  impairment.[6]   (*See* Comm'r's Br. at 6-7.)

23         None of these reasons for rejecting Dr. Gill's opinion was offered by the ALJ.  The ALJ was

24  completely silent as to Dr. Gill's repeated diagnoses of Plaintiff's CFS condition and whether the

25  diagnoses met the requirements to establish a medically determinable impairment pursuant to the

26  Social Security Administration statutory and regulatory framework.  Even the ALJ's summary of the

27

28         [6] Plaintiff asserts that he has had an abnormal stress test that supports that his condition is medically
determinable pursuant to SSR-99-2p; the record reflects that this test was interrupted due to dizziness associated with
low blood pressure.  (AR 307.)

1   facts contains no reference to these diagnoses despite the fact that the ALJ acknowledged medical

2   records generated by Dr. Gill at the VA as to Plaintiff's *other* conditions.  (*See* AR 22.)

3        The Ninth Circuit has repeatedly emphasized the "bedrock principle of administrative law"

4   that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the

5   agency." *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *see also*

6   *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained

7   to review the reasons the ALJ asserts," and an ALJ decision cannot be affirmed on the basis of

8   evidence he did not discuss); *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001) (an agency

9   decision cannot be affirmed on the ground that the agency did not invoke in making its decision);

10  *Barbato v. Comm'r of Soc. Sec.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is

11  appropriate when a decision does not adequately explain how a decision was reached, "[a]nd that

12  is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained

13  conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the

14  ALJ's decision, as adopted by the Appeals Council") (citations omitted).

15        The Court cannot infer from the ALJ's silence as to Plaintiff's diagnosed CFS whether (1) the

16  ALJ meant to determine that the CFS diagnoses rendered by Dr. Gill lacked probative value for

17  reasons similar to those asserted by the Commissioner here on appeal, or (2) the ALJ accidentally

18  overlooked the issue and failed to properly consider Plaintiff's diagnosed CFS condition and the

19  resulting symptoms.  The failure of the ALJ to at least consider Dr. Gill's opinion, which was

20  relevant to determine whether Plaintiff suffers from a medically determinable impairment for CFS,

21  was error.  Although the ALJ was free to reject Dr. Gill's diagnoses if he set forth clear and

22  convincing reasons for doing so,[7] the diagnosis cannot simply be ignored.  *Lingenfelter*, 504 F.3d

23  at 1030 (finding legal error where ALJ only "briefly mentioned" the opinion of one treating

24  physician and "did not acknowledge" the other at all); *O'Connor v. Astrue*, No. C-09-01508 JCS,

25  2010 WL 3785433, at *10 (N.D. Cal. Sept. 27, 2010) (error for ALJ to ignore treating physician's

26  diagnosis for PTSD "without providing specific and legitimate reasons").

27

28      [7] There is no indication that Dr. Gill's diagnosis regarding CFS has been explicitly or implicitly rejected by
another physician.  If Dr. Gill's diagnosis for CFS was controverted, it could only be rejected for specific and legitimate
reasons.  *Ramirez v. Shalala*, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

1        **3.        Prejudicial Error**

2        Finally, the Court cannot conclude with any confidence that the failure to consider Plaintiff's

3    diagnoses for CFS was harmless. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055-56 (9th Cir.

4    2006) (error is harmless when it is clear from the record that ALJ's error was "inconsequential to the

5    ultimate nondisability determination"). The Commissioner appears to assert that, even if the ALJ

6    had addressed Dr. Gill's diagnoses for CFS, there is no other evidence in the record, beyond Dr.

7    Gill's bare diagnoses, evidencing that Plaintiff's condition was a medically determinable impairment

8    under the SSA regulatory framework and SSR 99-2p.

9        As set forth above, the Court cannot affirm the ALJ's rejection of a treating physician's

10   opinion on reasoning and grounds not offered by the ALJ. Additionally, further evidence may be

11   required once the ALJ considers the issue. CFS is a particularly difficult condition to diagnose and

12   assess – hence the need for the CDC standards and the issuance of an SSA Ruling to provide

13   adjudicators with guidance regarding the analysis of CFS. *See, e.g., Walker v. Astrue*, 2008 WL

14   2368675, at * 2 (C.D. Cal. June 10, 2008) ("SSR 99-2p attempts to reconcile the requirements of the

15   Social Security Act with the practicalities of CFS, a disorder that is difficult to diagnose."). When

16   the ALJ considers the diagnoses for CFS, it is his duty to determine whether more information is

17   necessary to properly assess whether Plaintiff's condition amounts to a medically determinable

18   impairment. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or

19   clarification from your medical source when the report from your medical source contains a conflict

20   or ambiguity that must be resolved, *the report does not contain all the necessary information*, or

21   does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.")

22   (emphasis added).

23       Plaintiff did not undergo any consultative examinations with any physicians after Dr. Gill

24   diagnosed him with CFS, nor was his medical record reviewed by any physicians following the

25   diagnoses. In other words, no other physician has had an opportunity to consider whether Plaintiff

26   meets the diagnostic criteria for CFS. Further, no additional information regarding how Dr. Gill

27   arrived at his diagnoses was sought. It is the province and the duty of the ALJ to weigh the medical

28   evidence and assess the need for further evidentiary development. The Court cannot divine whether

1   the ALJ would have found a need to develop further evidence had he considered Plaintiff's

2   diagnoses for CFS.

3          Further, if Plaintiff's CFS was overlooked for purposes of deciding whether it was a

4   medically determinable impairment, any symptoms associated with the CFS would *not* necessarily

5   have been considered at subsequent steps of the sequential evaluation, whereas even non-severe

6   medically determinable impairments and the associated symptoms are considered in subsequent steps

7   in the evaluation process.  *See* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all

8   your impairment(s), even those that are not severe, in determining your residual functional

9   capacity").  The ALJ's decision does not indicate a consideration of Plaintiff's alleged fatigue other

10  than to simply recite it in a factual summary of Plaintiff's testimony.  (AR 21 ("He alleges he gets

11  tired every day, and has to sit in a recliner.").)  In other words, the Court cannot determine that the

12  ALJ considered all the alleged symptoms of Plaintiff's CFS and *still* concluded that Plaintiff was not

13  disabled, regardless of whether Plaintiff's CFS amounted to a medically determinable impairment.

14  As a result, the Court cannot find that the ALJ's failure to consider Plaintiff's diagnoses for CFS and

15  whether such diagnoses represent a medically determinable condition did not affect the disability

16  determination.  *Stout*, 454 F.3d at 1055-56.

17  **C.      Remand is Required**

18         "The court shall have power to enter, upon the pleadings and transcript of the record, a

19  judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

20  with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In Social Security cases,

21  the decision to remand to the Commissioner for further proceedings or simply to award benefits is

22  within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If

23  additional proceedings can remedy defects in the original administrative proceedings, a social

24  security case should be remanded.  Where, however, a rehearing would simply delay receipt of

25  benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal

26  quotation marks omitted); *see also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399

27  (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would

28

1  be served by further administrative proceedings, or where the record has been thoroughly

2  developed." (citation omitted)).

3          The ALJ's failure to consider Dr. Gill's diagnoses of CFS and whether Plaintiff's CFS

4  represents a medically determinable impairment was error, but this error can be remedied on remand.

5  The matter shall be remanded so that the ALJ may consider Plaintiff's diagnoses for CFS, weigh Dr.

6  Gill's opinion, and assess any need for further medical evidence.  On remand, the ALJ will also have

7  an opportunity to consider Dr. Gill's additional opinion that was associated with the record *after* the

8  hearing that the ALJ was previously unable to review.  (AR 394.)

9                                      **CONCLUSION**

10          Based on the foregoing, Based on the foregoing, the Court finds that the ALJ's decision is

11  not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to

12  the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED

13  to enter judgment in favor of Plaintiff Charles R. Jacobs and against Defendant Michael J. Astrue,

14  Commissioner of Social Security.

15

16  IT IS SO ORDERED.

17  **Dated:    March 14, 2011**                      **/s/ Sheila K. Oberto**
                                                UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28